UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                 :

DAVID WILLIAMS; JENNIFER A.       :
WILLIAMS,                             :
                      Plaintiffs,   :          13 Civ. 4315 (JPO)
                                :

           -against-               :
                                :         <u>ORDER</u>

GMAC MORTGAGE, INC.; U.S. BANK   :
NATIONAL ASSOCIATION,           :
                    Defendants. :
                                :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

       Plaintiffs David and Jennifer Williams claim that Defendants GMAC Mortgage, Inc. and

U.S. Bank National Association unlawfully attempted to collect on a note and unlawfully

foreclosed on their property.  Plaintiffs seek an order quieting title to their property, an order

"expunging the debt obligations and instruments asserted by Defendants against Plaintiff[s']

subject property from the record," money damages, and punitive damages.  U.S. Bank has

moved to dismiss the claims against it for failure to state a claim.  For the reasons that follow, the

motion is granted, and the claims against GMAC are dismissed sua sponte.

I.      **Background**

      A.      **Documents Integral to the Complaint**

      Because a motion to dismiss tests the sufficiency of the pleading, courts generally may

not rely on material outside the pleading to decide the motion.  *Global Network Commc'ns, Inc.*

*v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).  But if a pleading relies heavily on the

terms and effect of a document, that document is "integral" to the pleading, and the court may

consider it.  *Id.* at 156–57.  This rule prevents plaintiffs from surviving Rule 12(b)(6) motions

because of "clever drafting" alone, where "the incorporated material is a . . . legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint."  *Id.* at 157.

Plaintiffs did not attach the relevant note or mortgage to their complaint.  They allege that "the note in this matter never existed," suggesting that their mortgage did not secure any debt. (Compl. ¶ 36.)  But another allegation suggests that Bergin Financial, Inc. did loan Plaintiffs $230,915.39, and many of Plaintiffs' allegations are premised on the existence of a note.  (*Id.* ¶¶ 7 (describing mortgage "in the amount of $230,915.39"), 14 ("Further, there is a stamped indorsement on the Note."), 16 ("Then there is an alleged Allonge attached to the Note."), 23 ("It appears that Residential Funding owned the Note but then tried to assign it as a Bergin Financial."), 34 ("The Note was assigned to a trust in order to create a mortgage-backed security to trade on the New York Stock Exchange.").  It is clear that Plaintiffs' claim relies heavily on the note and mortgage.  They could not argue that they lacked notice or a chance to respond to these matters—U.S. Bank attached the note and mortgage to their motion to dismiss, and Plaintiffs discussed the note and mortgage in detail in their complaint.  The Court therefore considers the note to be integral to the complaint.

### B.     Background Facts

Plaintiffs' allegations are not very clear.  This section summarizes the allegations as the Court understands them, as well as information from the relevant note and mortgage.

Plaintiffs "were given a mortgage by Bergin Financial, Inc." in 2005.  (Compl. ¶ 7.)  The mortgage named Mortgage Electronic Registration System, Inc. (MERS) as nominee for Bergin Financial and secured a note for $230,915.39.  (Belinfanti Decl. Ex. B at 1–13 (Mortgage), 14–

17 (Note), Dkt. No. 7-2.)  Later, in 2011, MERS assigned the mortgage to U.S. Bank.  (Compl. ¶ 8.)  The assignment to U.S. Bank was executed by an assistant secretary for MERS and notarized in Pennsylvania.  (*Id.* ¶¶ 10, 12.)  Plaintiffs' note, on the other hand, was assigned twice by endorsements in an allonge to the note.[1]  The first endorsement was from Bergin Financial, Inc. to Residential Funding Corporation.  (Note at 16.)  The second endorsement was from Residential Funding Corporation to U.S. Bank.  (*Id.*)

U.S. Bank appears to have assigned the right to collect on the note to GMAC.  (*See* Compl. ¶ 32.)  At some point, GMAC sent mortgage statements to Plaintiffs.  (*Id.* ¶ 30.)  Plaintiffs allege that "[u]pon such reliance Plaintiff paid money to Defendant," presumably GMAC.  (*Id.* ¶ 31.)  Later, Plaintiffs allege that a "Defendant" (it is not clear which one) sent collection notices to Plaintiffs, despite the fact that it knew or should have known that it lacked "true, legal title to the collection on the subject mortgage."  (*Id.* ¶¶ 48–49.)  When Plaintiffs stopped making mortgage payments, that same Defendant called Plaintiffs several times a day and sent more collection letters.  (*Id.* ¶¶ 50–51.)  Eventually, Defendants foreclosed on Plaintiffs' property and sold it (*id.* ¶ 54.)[2]

Plaintiffs' complaint asserts four claims against Defendants under federal diversity jurisdiction.  (*Id.* ¶¶ 6, 35–56.)  First, they claim that Defendants are liable for "wrongful collection practice."  (*Id.* at 5.)  Second, they seek "an injunctive Order of Quiet Title of the Note

---

[1] The note itself has a space for an endorsement to Countrywide Bank, N.A.  The space was never signed; instead, someone handwrote "VOID" where an agent for Bergin Financial would have signed.  (Note at 16.)

[2] Two paragraphs later, Plaintiffs also allege that Defendants are in possession of the property. (Compl ¶ 56 ("Defendants now has possession of the property.").)

3

and Mortgage." (*Id.*)  Third, they claim that Defendants are liable for fraud.  (*Id.*)  Fourth, they

claim that Defendants are liable for conversion.  (*Id.* at 6.)  In their prayer for relief, Plaintiffs

also seek damages for unjust enrichment.  (*Id.*)

## II.    Discussion

### A.    Legal Standard

The general pleading standard, Rule 8(a) of the Federal Rules of Civil Procedure,

requires a complaint to make a short, plain statement of a plausible claim for relief.  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678–79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007)).  To determine whether a complaint satisfies Rule 8, a court must accept all well-pleaded

factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  *Id.*  But the

court need not accept "[t]hreadbare recitals of the elements of a cause of action," which are

essentially legal conclusions.  *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).  After separating

legal conclusions from well-pleaded factual allegations, the court must determine whether those

facts make it plausible—not merely possible—that the defendants acted unlawfully.  *Id.*

Fraud claims are also subject to Rule 9(b) of the Federal Rules of Civil Procedure.  Rule

9(b) allows a party to allege a person's state of mind in general terms, but otherwise requires that

circumstances constituting fraud be stated "with particularity."  Rule 9(b) is more demanding

than Rule 8, but it does not replace Rule 8.  The rules must be read in conjunction with one

another.  Wright & Miller, Fed. Prac. & Proc.: Civ. 3d § 1298 (2004 & Supp. 2013); *see United*

*States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)

(applying *Iqbal* to claims subject to Rule 9(b)).

Pleading fraud with particularity requires the plaintiff to specify the person who made the

misrepresentation, the time and place of the misrepresentation, the content of the

4

misrepresentation, and the reasons the misrepresentation was fraudulent. *See Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197–98 (2d Cir. 2013) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).  States of mind are exempt from the particularity requirement; they may be pleaded "generally" under Rule 9(b).  This allowance is not "license to base claims of fraud on speculation and conclusory allegations."  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).  Instead, a general allegation about the defendant's state of mind must be supported by specific facts that strongly support an inference[3] of fraudulent intent.  *Id.* (citing *Mills*, 12 F.3d at 1176).  The inference may be supported by the defendant's motive and opportunity to defraud, or by other facts showing that the defendant acted knowingly or recklessly.  *See id.* (citing *In re Time Warner Inc. Secs. Litig.*, 9 F.3d 259, 268–69 (2d Cir. 1993)).  The Second Circuit has also held that a complaint subject to Rule 9(b) should be allowed to survive a motion to dismiss based on "fairly tenuous inferences" of intent, because intent is a fact that a jury should find.  *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 693 (2d Cir. 2009) (citing *Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 538 (2d Cir. 1999)).  Nevertheless, it appears that complaints under Rule 9(b) are simultaneously subject to the "strong inference" standard.  *See id.* (citing *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)).

---

[3] This standard is distinct from the "strong inference" standard codified in the Private Securities Litigation Reform Act.  That act does not apply to other types of fraud claims.  *SEC v. Dunn*, 587 F. Supp. 2d 486, 501 (S.D.N.Y. 2008).

In sum, to state a fraud claim, the plaintiff must make particular factual allegations supporting a reasonable inference that the defendants are liable for fraud, and allegations that strongly support an inference that the defendants acted with intent to defraud.

### B.    Wrongful Collection Practice

It is not clear what type of claim Plaintiffs intend to raise in their first claim for "Wrongful Collection Practice."  The complaint contains no reference to the Fair Debt Collection Practices Act[4] or any other federal consumer protection statute—in fact, the complaint identifies diversity jurisdiction, not federal question jurisdiction, as the basis for subject matter jurisdiction in this case.  The complaint contains no reference to any consumer protection statute in New York or in Michigan, the state where Plaintiffs reside and where the property at issue is located. The Court is not aware of any common law tort, under New York or Michigan law, that Plaintiffs may be referencing by the term "wrongful collection practice."  This claim against both Defendants is dismissed for failure to state a claim.

### C.    Quiet Title

Plaintiffs have failed to allege facts justifying an order to quiet title to their former property.[5]  A quiet title action between private parties is a state law claim.  Federal courts faced with state law claims must apply choice-of-law principles of the state in which they sit.  *Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 4 (1975) (*per curiam*) (citing *Klaxon Co. v. Stentor*

---

[4] Plaintiffs' opposition makes a passing reference to the Fair Debt Collection Practices Act, but the complaint does not make any indication that Plaintiffs intended to raise such a claim.  (Pls.' Opp. at 7, Dkt. No. 12.)

[5] The Court construes Plaintiffs' claim for "an injunctive Order of Quiet Title of the Note and Mortgage" as a claim for an order quieting title to the real property that was sold in a foreclosure sale.

*Electric Mfg. Co.*, 313 U.S. 487 (1941)).  The New York choice-of-law analysis begins by asking whether there is an actual conflict between the different bodies of law that might apply.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012) (quoting *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415 (2d Cir. 2006)).  There is a conflict here.  In New York, a plaintiff must allege that she has actual or constructive possession of the property at issue to seek an order quieting title.  *Barberan v. Nationpoint*, 706 F.Supp.2d 408, 418–19 (S.D.N.Y. 2010).  This is not so under Michigan law.  Mich. Comp. Laws § 600.2932(1).  In light of that conflict, the Court must determine which body of law to apply.  For claims that are wholly concerned with title to real property, New York's choice-of-law rules apply the law of the state where the property is located.  *TEG NY LLC v. Ardenwood Estates, Inc.*, 2004 WL 626802, *3 (E.D.N.Y. Mar. 30, 2004) (citing *El Cid Ltd. v. N.J. Zinc Co.*, 575 F. Supp. 1513, 1515 (S.D.N.Y. 1983), *aff'd*, 770 F.2d 157 (2d Cir. 1985)).  Because the property at issue here is located in Michigan, Michigan law applies.

Under Michigan law, a mortgagor loses all interest in her property when her statutory right of redemption expires following a foreclosure sale.  *Goss v. ABN AMRO Mortg. Grp.*, 549 Fed. App'x 466, 475 (6th Cir. 2013) (citing *Kheder v. Seterus, Inc.*, 2013 WL 1286020, *9 (Mich. Ct. App. Mar. 28, 2013) (per curiam)).  Public records indicate that Plaintiffs' property was sold at a foreclosure sale on January 15, 2013.  (Belinfanti Decl. Ex. C at 1 (Sheriff's Deed), Dkt. No. 7-3.)  Because the longest redemption period under Michigan law is one year, Plaintiffs' redemption period expired no later than January 15, 2014.[6]  Mich. Comp. Laws

---

[6] Plaintiffs have not pleaded any facts indicating that they would or did seek an equitable extension of their redemption period.

§ 600.3240(7)–600.3240(13).  (*Accord* Belinfanti Decl. Ex. C at 11 (Affidavit of Purchaser at Foreclosure Sale) (indicating July 15, 2013 as the date the redemption period expired).)

If a plaintiff wishes to quiet title to property by setting aside a foreclosure sale following expiration of her redemption period, she must show that there was some fraud, accident, or mistake related to the foreclosure proceeding itself.  *Goss*, 549 Fed. App'x at 475 (citing *Stein v. U.S. Bancorp*, 2011 WL 740537, *6 (E.D. Mich. Feb. 24, 2011)).  Plaintiffs in this case do not allege any irregularity in the proceedings leading to the foreclosure sale of their property.  They argue only that the foreclosure was fraudulent because Defendants knew they did not hold Plaintiffs' note.[7]

U.S. Bank did hold Plaintiffs' note.  Both endorsements in the allonge—the endorsement from Bergin (the originator) to Residential Financial, and then from Residential Financial to U.S. Bank—were valid.  Plaintiffs make three arguments to the contrary in their opposition and the complaint itself.  Plaintiffs' first argument regarding the timing of the endorsement from Bergin to Residential Financial is difficult to follow—Plaintiffs may even be arguing that the note was endorsed three times.  Their argument is confused and does not correspond to what are clearly two endorsements in the allonge.  (Compl. ¶¶ 17–25; Pls'. Opp. at 8–9 (Dkt. No. 12).)  Their confusion may result from the fact that Residential Financial endorsed the note to itself (in other words, to Residential Financial) while acting as an agent of Bergin Financial.  While this endorsement suggests that Residential Financial may have violated its fiduciary duty to Bergin,

---

[7] Plaintiffs make this argument under their fourth claim, "wrongful conversion."  (Compl. ¶¶ 53–56.)

Plaintiffs have not argued that this violation affected the validity of the endorsement, and the Court declines to consider that question sua sponte.

Second, Plaintiffs argue that the endorsement to U.S. Bank was invalid because U.S. Bank was acting as trustee for a Real Estate Mortgage Investment Conduit (REMIC) trust. A REMIC is an entity that receives special tax treatment because it holds a pool of mortgages that does not change following the REMIC's startup date, subject to certain exceptions. 26 U.S.C. § 860D (defining REMICs); 26 U.S.C. § 860G(a)(3) (defining qualified mortgages that REMICs may hold). If a mortgage is transferred to a REMIC following the REMIC's startup date, the REMIC may lose its favorable tax treatment. Plaintiffs argue that the endorsement to U.S. Bank as trustee for a REMIC trust was invalid because the REMIC's startup date was in 2006, and therefore, Plaintiffs' note could not be transferred to the REMIC in 2011. This point is unpersuasive. While transferring a note to the REMIC might have negative tax consequences for the REMIC investors, Plaintiffs have not argued any reason why such a transfer would be "meaningless and legally unenforceable." (Pls.' Opp. at 8.)

Third, Plaintiffs argue that the endorsement from Residential Financial to U.S. Bank is a legal nullity because the endorsement is "to U.S. Bank as trustee" without specifying a trust or beneficiary for whom U.S. Bank would hold the property in trust. But even if this endorsement failed to convey the note in trust for REMIC investors, U.S. Bank would have become a holder of the note in a resulting trust for Residential Financial. *See Coalition Protecting Auto No-Fault v. Mich. Catastrophic Claims Ass'n*, __ N.W.2d __, 2014 WL 2108960 (Mich. Ct. App. May 20, 2014) (quoting *Potter v. Lindsay*, 60 N.W.2d 133, 136 (1953)) ("A resulting trust arises where a person makes . . . a disposition of property under circumstances which raise an inference that he does not intend that the person . . . holding the property should have the beneficial interest

9

therein."); *see also Potter*, 60 N.W. 2d at 136 (quoting Restatement of Trusts (First) Ch. 12 Intro. Note) ("Since the person who holds the property is not entitled to the beneficial interest, . . . it springs back or results to the person who made the disposition or to his estate, and the person holding the property holds it upon a resulting trust for him or his estate.").[8]

In sum, the complaint and documents integral to the complaint show that U.S. Bank did hold Plaintiffs' note.  But even if U.S. Bank did not hold Plaintiffs' note, it could have initiated foreclosure proceedings.  Michigan law allows any party with an interest in the debt secured by the mortgage to initiate foreclosure proceedings. *Gardner v. Quicken Loans, Inc.*, __ Fed. App'x __, 2014 WL 2442563, *4 (6th Cir. 2014) (citing Mich. Comp. Laws § 600.3204(1)(d)).  A mortgagee of record has an interest in the underlying debt. *Id.* (citing *Residential Funding Co. v. Saurman*, 805 N.W. 2d 183, 184 (Mich. 2011)).  And in Michigan, the holder of the mortgage may be different from the holder of the debt. *Id.* (citing *Hargrow v. Wells Fargo Bank N.A.*, 491 Fed. App'x 534, 538 (6th Cir. 2012)).  Plaintiffs allege that their mortgage was assigned to U.S. Bank in 2011;[9] therefore, U.S. Bank was entitled to initiate foreclosure proceedings, even if it did not hold Plaintiffs' note.

---

[8] Plaintiffs have not argued that any law other than Michigan law would be applicable to this endorsement.

[9] Plaintiffs contend that "it appears this assignment is fraudulent and unenforceable" because it was notarized in Pennsylvania and "Plaintiff[s] and US Bank are both outside of Pennsylvania." (Pls.' Opp. at 4.)  Even if it is true that U.S. Bank has no agents in Pennsylvania, the assignment at issue was from MERS to U.S. Bank—the notarized signature is that of a MERS agent, not a U.S. Bank agent.  The location of U.S. Bank's agents is irrelevant.

For the foregoing reasons, Plaintiffs have failed to plead any "fraud, accident, or mistake" in connection with the foreclosure proceeding. *Goss*, 549 Fed. App'x at 475. Their request for an order quieting title to their former property is denied.

### D.      Fraud, Conversion, and Unjust Enrichment

Because U.S. Bank held Plaintiffs' note, Plaintiffs have failed to state a claim for fraud, conversion, or unjust enrichment. Pleading fraud requires pleading specific facts that strongly support an inference of fraudulent intent. *Shields*, 25 F.3d at 1128 (citing *Mills*, 12 F.3d at 1176). Under both New York and Michigan law,[10] conversion requires wrongful exercise of control over another's property. *Lawsuit Financial, L.L.C. v. Curry*, 683 N.W.2d 233, 240–41 (Mich. Ct. App. 2004); *Goldberger v. Rudnicki*, 944 N.Y.S.2d 157, 159 (2d Dep't 2012). And unjust enrichment requires—unsurprisingly—that the defendant was enriched unjustly. *Ligett Restaurant Grp., Inc. v. City of Pontiac*, 676 N.W.2d 633, 639 (Mich. Ct. App. 2003); *Ga. Malone & Co., Inc. v. Ralph Rieder*, 926 N.Y.S.2d 494, 498 (1st Dep't 2011).

In light of the fact that U.S. Bank was entitled to foreclose on Plaintiffs' mortgage, Plaintiffs have failed to allege the requisite wrongful control, unjust enrichment, and facts supporting a strong inference of fraudulent intent that are necessary to sustain their remaining claims against U.S. Bank. As for GMAC, Plaintiffs' claims of fraud, conversion, and unjust enrichment rest entirely on the proposition that U.S. Bank did not hold their note, and therefore, U.S. Bank could not assign collection rights to GMAC. Because the complaint and integral documents establish that U.S. Bank did hold Plaintiffs' note, and because the complaint makes

---

[10] Again, Plaintiffs have not argued that the law of any other jurisdiction is applicable.

no other allegations in support of Plaintiffs' remaining claims against GMAC, the Court dismisses Plaintiffs' remaining claims sua sponte.

### E.      Leave to Amend

Plaintiffs have not requested leave to amend.  While leave to amend a complaint must be "freely given when justice so requires," Fed. R. Civ. P. 15(a), "no court can be said to have erred in failing to grant a request that was not made."  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 126 (2d Cir. 2013) (citation omitted).  This action is dismissed.

## III.   Conclusion

For the foregoing reasons, U.S. Bank's motion to dismiss the complaint is GRANTED, and all claims against GMAC are dismissed sua sponte.  The Clerk of Court is directed to terminate all pending motions and close this case.

SO ORDERED.

Dated: New York, New York
       June 6, 2014

_____
J. PAUL OETKEN
United States District Judge